Kathryn R. Montgomery
(Va. Bar No. 42380)
Department of Justice
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
(804) 771-2310
Fax: (804) 771-2330

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| **In re:**<br><br>**CIRCUIT CITY STORES, INC., et al.,**<br><br>Debtors. | Consolidated<br>Adv. No. 19-03091 (KRH) (lead)<br>Adv. No. 19-03060 (KRH)<br><br>Case No. 08-35653 (KRH)<br><br>Chapter 11<br><br>(Jointly Administered) |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

| | |
|---|---|
| RAMONA D. ELLIOTT<br>Deputy Director/General Counsel<br>P. MATTHEW SUTKO<br>Associate General Counsel<br>BETH A. LEVENE<br>Trial Attorney<br>Department of Justice<br>Executive Office for<br> United States Trustees<br>441 G Street, N.W., Suite 6150<br>Washington, DC  20530<br>(202) 307-1399<br>Fax: (202) 307-2397 | JOHN P. FITZGERALD, III<br>Acting United States Trustee, Region 4<br>KATHRYN R. MONTGOMERY<br>Assistant United States Trustee<br>Department of Justice<br>Office of the United States Trustee<br>701 East Broad Street, Suite 4304<br>Richmond, Virginia 23219<br>(804) 771-2310<br>Fax: (804) 771-2330 |

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................................ ii

I.     Congress Manifestly Would Not Choose to Effectively Repeal the 2017 Act's Fee Increase. ........................................................................................................................... 1

II.    Congress's Chosen Prospective-Only Remedy Is Constitutionally Sufficient. .................. 3

III.   Even if Retrospective Relief Were Appropriate, Plaintiff Is Not Entitled to a Retrospective Fee Decrease. ............................................................................................... 6

IV.   At a Minimum, a Retrospective Remedy Is Unavailable for the First Three Quarters of 2018. ............................................................................................................................. 9

**CONCLUSION** ............................................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*,
    488 U.S. 336 (1989)..........................................................................................................5

*Ameur v. Gates*,
    759 F.3d 317 (4th Cir. 2014) ...........................................................................................3

*Barr v. AAPC*,
    140 S. Ct. 2335 (2020)............................................................................................ *passim*

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022)......................................................................................................3

*Finlator v. Powers*,
    902 F.2d 1158, 1163 (4th Cir. 1990) ................................................................................5

*Fulton Corp. v. Faulkner*,
    345 N.C. 419 (1997), *on remand from* 516 U.S. 325 (1996)......................................6

*Heckler v. Matthews*,
    465 U.S. 728 (1984)..................................................................................................4, 5, 6

*Iowa-Des Moines Nat. Bank v. Bennett*,
    284 U.S. 239 (1931)..........................................................................................................5

*McKesson Corp. v. Div. of Alc. Bev. & Tobacco*,
    496 U.S. 18 (1990).............................................................................................................5

*In re Mosaic Mgmt. Grp., Inc.*,
    22 F.4th 1291 (11th Cir.) (Brasher, J., concurring in result), *cert. granted,
    judgment vacated sub nom. Bast Amron LLP v. U.S. Tr. Region 21*, 142 S. Ct.
    2862 (2022) ................................................................................................................1, 3, 6

*Sessions v. Morales-Santana*,
    137 S. Ct. 1678 (2017)............................................................................................ *passim*

*Siegel v. Fitzgerald*,
    142 S. Ct. 1770 (2022)......................................................................................................1

*St. Angelo v. Victoria Farms, Inc.*,
    38 F.3d 1525 (9th Cir. 1994), *amended*, 46 F.3d 969 (9th Cir. 1995)...............3, 4, 6

*United States v. Nordic Village, Inc.*,
    503 U.S. 30 (1992)............................................................................................................3

**Statutes**

28 U.S.C. § 1930(a)(6)......................................................................................................................7

28 U.S.C. § 1930(a)(7)...................................................................................................................1, 7

Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325
    (2021), 134 Stat. 5088..............................................................................................................2

**Other Authorities**

Fed. R. Evid. 201(b)........................................................................................................................8

As Plaintiff's response concedes, Resp. at 3, regardless of the relief requested, courts "must adopt the remedial course Congress likely would have chosen 'had it been apprised of the constitutional infirmity.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 (2017).

This case thus presents two questions: What remedy would Congress choose? And does that remedy entitle Plaintiff to his requested relief? Because Congress plainly would choose uniformly increased fees, Plaintiff is not entitled to the refund he seeks.

I. **Congress Manifestly Would Not Choose to Effectively Repeal the 2017 Act's Fee Increase.**

Congress instituted quarterly fees over thirty years ago to ensure that the Program's costs would not fall on taxpayers. *See Defendant's Motion to Dismiss* ("MTD") at 2. For decades it has stayed true to that goal, periodically increasing the fees as necessary. *See Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1777 (2022).

In 2017, Congress determined that another fee increase was required to avoid potentially imposing a financial burden on taxpayers. *See* MTD at 3-4. And through consultation with the Congressional Budget Office, it ensured that the fee increase also enabled it to fund new bankruptcy judgeships. *Id*.

When it passed the 2017 Act, Congress's "manifest intent [was] to raise the fees in all districts." *In re Mosaic Mgmt. Grp., Inc.*, 22 F.4th 1291, 1330 (11th Cir.) (Brasher, J., concurring in result), *cert. granted, judgment vacated sub nom. Bast Amron LLP v. U.S. Tr. Region 21*, 142 S. Ct. 2862 (2022); *see also Siegel*, 142 S. Ct. at 1782 n.2. It had enacted section 1930(a)(7) expressly to provide uniform fees in BA districts, and the Judicial Conference's 2001 Standing Order required equal fees. *See* MTD at 3.

The 2021 Act hammers home the point. Congress included an express legislative statement that it had always intended the fees to "remain consistent across all Federal judicial

1

districts." 2021 Act § 2(a)(4)(B). And it amended the statutory language to ensure the Judicial Conference would not again collect lower fees. *Id*. § 3(d)(2).

Congress could hardly have spoken more plainly. In 2017, it wanted and expected quarterly fees to increase in all districts. In 2021, it reiterated that fact.

Plaintiff argues that because the 2021 Act did not expressly command collecting the 2017 fee increase in BA districts, Congress must not have wanted that. Resp. at 3. But Plaintiff ignores the flip side of this coin: Congress also did not direct a multi-million-dollar refund to erase the fee increase in Program districts.

Instead, after some courts had found the 2017 Act unconstitutionally non-uniform, Congress chose to provide a prospective-only remedy in the 2021 Act. The Constitution requires nothing more. *See infra* 3-6; MTD at 8-12.

And there is no evidence that—if forced to choose a retrospective remedy—Congress would opt to repay the millions it raised through the 2017 Act. Requiring the United States to return those funds—potentially over $300 million—would eviscerate this congressional enactment, undermine Congress's goal to raise revenue, and once again threaten to impose costs of the bankruptcy system on taxpayers.

Further, contrary to Plaintiff's argument, Resp. at 7, the presumption is in favor of the "main rule, not the exception." *Morales-Santana*, 137 S. Ct. at 1700; *accord Barr v. AAPC*, 140 S. Ct. 2335, 2350 (2020). Where "the discriminatory exception consists of favorable treatment for a discrete group . . . striking the discriminatory exception [] leads . . . to extending" the less favorable rule—here the higher fees—"to cover the previously favored group." *Morales-Santana*, 137 S. Ct. at 1699. As Judge Brasher explained, "the remedy that most accords with Congress's intent would be for the Judicial Conference to apply the general rule—

the higher fee—in the Bankruptcy Administrator districts." *Mosaic*, 22 F.4th at 1330 (Brasher, J., concurring in result).

Faced with this incontestable evidence of legislative intent, Plaintiff resorts to hyperbolic speculation, *see infra* 7-8, regarding the difficulty of collecting increased fees in BA districts. But Congress's first-choice prospective-only remedy entails no collection. And Plaintiff cites no authority for his contention that—if a retrospective remedy is required—this Court may impose one at odds with congressional intent based on his concerns. If anything, the difficulties he suggests support providing prospective-only relief—as Congress already has done.

## II. Congress's Chosen Prospective-Only Remedy Is Constitutionally Sufficient.

Congress's choice in the 2021 Act to provide prospective-only relief is constitutionally valid. Plaintiff is entitled to no more.

"[M]oney damages are not an automatic entitlement anytime that constitutional rights have been violated." *Ameur v. Gates*, 759 F.3d 317, 326 (4th Cir. 2014) (internal quotation marks omitted). *See also* MTD at 9. Indeed, for constitutional violations, retrospective monetary relief is rarely available. A plaintiff can obtain "affirmative monetary recovery" from the United States only if Congress has expressly waived sovereign immunity. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-35 (1992). Likewise, Congress has never authorized damages awards against individual federal officials for constitutional violations, and such a remedy generally cannot be judicially implied. *See Egbert v. Boule*, 142 S. Ct. 1793, 1802-04 (2022).

Precedent confirms the propriety of providing a prospective-only remedy here. *See* MTD at 8-11 (discussing *AAPC*, *Morales-Santana*, and *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), *amended*, 46 F.3d 969 (9th Cir. 1995)).

3

Plaintiff's attempt to distinguish these cases as seeking only prospective or non-monetary relief, Resp. at 9, fails. The *Morales-Santana* respondent sought a ruling that he was a United States citizen from birth, not purely prospective relief. 137 S. Ct. at 1687. And the Court's holding expressly applied only "prospectively." *Id*. at 1701. While the *AAPC* respondents sought only declaratory relief, the result would not have been different had they sought to invalidate money judgments against them. Further, the Court expressly held that its decision did not create monetary liability for calls that pre-dated its decision, leaving the past unequal treatment unchanged. *AAPC*, 140 S. Ct. at 2355 n.12 (plurality op.); *see id.* at 2363 (Breyer, J., concurring in judgment with respect to severability).

And, of course, the Ninth Circuit's refusal to order a quarterly-fee refund in *Victoria Farms* is precisely on point, MTD at 10—which is perhaps why Plaintiff fails to mention it.

Plaintiff's argument is further refuted by *Heckler v. Matthews*, 465 U.S. 728, 739 (1984). There, the Supreme Court affirmed legislation that, like the 2021 Act, provided prospective relief but left past unconstitutional inequality in place, *id*. at 739, despite the existence of a "monetary injury," Resp. at 6. The statute upheld in *Heckler* prospectively corrected unconstitutional discrimination in federal-benefits payments but continued the discriminatory payments for five years past the legislative fix. 465 U.S. at 732-33. The Court explained: "We have recognized, in a number of contexts, the legitimacy of protecting reasonable reliance on prior law even when that requires allowing an unconstitutional statute to remain in effect for a limited period of time." *Id*. at 746.

Here, too, there is no constitutional barrier to Congress's provision of prospective-only relief. The transitional three-year lack of uniformity is of shorter duration than that permitted in

*Heckler*. And Plaintiff himself argues that the 2021 Act did not require fee collection in BA districts to avoid "upset[ting] settled expectations." Resp. at 3.

The Fourth Circuit likewise has approved a prospective-only remedy without requiring a retrospective elimination of unconstitutionally unequal treatment. In *Finlator v. Powers*, the court enjoined as unconstitutional a sales-tax exemption for Bibles but not other sacred texts without any discussion of whether the state should (or could) collect the sales taxes from past Bible sales. 902 F.2d 1158, 1163 (4th Cir. 1990).

The cases on which Plaintiff relies to insist that prospective-only relief is impermissible are inapposite, most importantly because in none of them had Congress already legislated prospective-only relief as it has here. These cases do not support imposing retrospective relief plainly inconsistent with congressional intent.

Moreover, as already explained, *see* MTD at 11-12, this case does not implicate the due-process requirements for state-tax disputes at issue in most of the cases Plaintiff cites.[1] *See* Resp. at 7-12 (citing *Reich v. Collins,* 513 U.S. 106 (1994)*, Harper v. Virginia Dep't of Tax'n,* 509 U.S. 86 (1993)*, McKesson Corp. v. Div. of Alc. Bev. & Tobacco,* 496 U.S. 18 (1990), and *Atchison, T. & S.F. Ry. Co. v. O'Connor,* 223 U.S. 280 (1912)).

Instead, those cases support prospective-only relief here. *See* MTD at 11-12. Plaintiff's claim of duress from the "threat" of dismissal, Resp at 12, ignores both the hearing rights accorded before dismissal and the facts of this case. Not only was no such motion filed, but

---

[1] Nor does this case involve a competitive injury that would not be redressed absent a refund, as in *McKesson* and *Iowa-Des Moines Nat. Bank v. Bennett,* 284 U.S. 239 (1931), or an attempt to burden Plaintiff with the task of seeking payments from others as in *Bennett* and *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.,* 488 U.S. 336 (1989). And *Allegheny* recognized—consistent with *Heckler*—that a "transitional delay . . . resulting in inequalities" is permissible. *Id*. at 344 (holding ten years was more than "transitional").

Plaintiff actually stopped paying the fee increase, opting instead to seek pre-deprivation declaratory relief. That Plaintiff chose not to seek injunctive relief against the Judicial Conference to equalize the BA fees does not entitle him to a monetary remedy inconsistent with what Congress would have willed. *See Mosaic*, 22 F.4th at 1330 (Brasher, J., concurring in result).

### III. Even if Retrospective Relief Were Appropriate, Plaintiff Is Not Entitled to a Retrospective Fee Decrease.

Just as it is clear that Congress actually chose prospective-only relief, it is equally clear that if forced to choose a retrospective remedy, it would increase the fees across the board, as it originally expected would happen. *See supra* 1-3; MTD at 12-15.

Seeking to deflect from the fatal fact that the only retrospective remedy consistent with congressional intent is to increase BA fees, Plaintiff focuses on hypothesized barriers to collecting them. But whether an effort to collect fees in BA districts would be successful is not relevant to the level-up/level-down inquiry. Plaintiff cites no authority that the Court may flout legislative intent based on such feasibility concerns. To the contrary, there is ample authority finding that legislative intent dictated eliminating a favorable exception although past inequality was not corrected.[2] *See supra* 3-5 (discussing *Morales-Santana*, *AAPC*, *Victoria Farms*, *Heckler*, and *Finlator*); MTD at 8-11.

Plaintiff's unsupported speculation—that collecting the increased fees in BA districts is either legally or practically impossible—is wrong.[3]

---

[2] *See also Fulton Corp. v. Faulkner*, 345 N.C. 419, 424 (1997) (severing unconstitutional tax deduction, holding legislature could determine whether to forgive broadened tax), *on remand from* 516 U.S. 325 (1996).

[3] Plaintiff's assertion that the Tenth Circuit's not-yet-final order precludes other courts from reaching a different conclusion, Resp. at 21, is legally unsupportable. The Tenth Circuit's

6

First, Plaintiff posits that there is no legal authority to collect the increased fees. But the authority derives from the Constitution itself. "The Court's power and preference to partially invalidate an [unconstitutional] statute . . . has been firmly established since *Marbury v. Madison*." *AAPC*, 140 S. Ct. at 2350. The Court thus may invalidate the unconstitutional exception that allowed lower fees in BA districts.

Further, section 1930(a)(7) authorizes the Judicial Conference to assess the fees established section 1930(a)(6). Nothing in the statute prohibits it from reconsidering its belated decision to collect lower fees. Nor is there any reason to think the Judicial Conference would flout either a Fourth Circuit or Supreme Court decision holding that collecting those fees is the proper remedy.

Second, Plaintiff offers a strawman argument that increased BA fee assessments would create a "nightmare scenario," Resp. at 5, requiring the clawback of distributions under confirmed plans. Plaintiff has not identified a single case where either the Program or a BA forced such a redistribution of payments to collect unpaid fees. That is because unpaid fees in closed cases are referred to Treasury for collection—which occurs completely outside of any plan process. *See* MTD at 16. If a debtor has dissolved or a liquidating trust has made all its distributions, then collection may not be successful—but that's par for the course; even in ordinary circumstances, there is not a 100% success rate in collecting quarterly fees. *See, e.g., In re US Airways, Inc.*, Case No. 04-13819, Dkt. Nos. 2754 at 27-28, 3193, Claim 3-1 (Bankr. E.D. Va.) (plan and confirmation order providing $5,000 payment on proof of claim for $50,500 in unpaid quarterly fees).

---

decision does not bind courts in other circuits. If necessary, the Supreme Court can resolve a circuit split.

Assessments in BA districts thus will not result in "hundreds or thousands of actions." Resp. at 14. In fact, there are relatively few BA cases even potentially at issue. We estimate about 500 chapter 11 cases were pending in BA districts from January 1, 2018, through September 30, 2018, compared to about 17,000 chapter 11 cases in Program districts.[4] Only a fraction of those would have had large enough disbursements between January 1, 2018, and March 31, 2021, to be subject to the 2017 Act's fee increase. In Program districts, about 12 percent (approximately 2,100) had such disbursements. If, as in Program districts, 12% of BA chapter 11 cases were subject to the fee increase, that would be only about 60 cases.

The undeniable fact is that neither retrospective remedy would produce perfect uniformity. But because the number of cases in BA districts is a tiny fraction of those in Program districts, the scale of both any remaining disuniformity and the hypothesized difficulties in administering the remedy would be exponentially smaller from increasing the fees in BA districts. To the extent retrospective uniformity is required, the most feasible way to achieve it is by equalizing the fees in the fraction of cases that the Judicial Conference unilaterally excepted from Congress's fee increase.

---

[4] The Program maintains data regarding cases filed in Program districts but not BA districts. The estimate of BA cases is based on data available at *https://www.fjc.gov/research/idb/bankruptcy-cases-filed-terminated-and-pending-fy-2008-present*. This estimate is consistent with data showing 3% of nationwide chapter 11 filings from January 1, 2018, through September 30, 2018 were in BA districts, *see* https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables, as 500 is about 3% of 17,500. The Court may take judicial notice of the publicly available data. Fed. R. Evid. 201(b). Because this is a motion to dismiss, the United States Trustee has not submitted a declaration, but stands ready to do so.

**IV.   At a Minimum, a Retrospective Remedy Is Unavailable for the First Three Quarters of 2018.**

Contrary to Plaintiff's argument, the Supreme Court expressly did not determine the remedy issue, and *a fortiori* did not determine if there were remedy considerations specific to the first three quarters of 2018.  As previously explained, *see* MTD at 17, the Judicial Conference's 2001 Standing Order renders a retrospective remedy for that period both legally and factually unwarranted.

## CONCLUSION

For these reasons, this Court should dismiss both adversary proceedings.

Date: October 25, 2022                                            Respectfully submitted,

RAMONA D. ELLIOTT                                         By:  /s/ *Kathryn R. Montgomery*
Deputy Director/General Counsel
P. MATTHEW SUTKO                                           JOHN P. FITZGERALD, III
Associate General Counsel                                      Acting United States Trustee, Region 4
BETH A. LEVENE                                                  KATHRYN R. MONTGOMERY
Trial Attorney                                                           Assistant United States Trustee
Department of Justice                                             Department of Justice
Executive Office for                                                 Office of the United States Trustee
 United States Trustees                                           701 East Broad Street, Suite 4304
441 G Street, N.W., Suite 6150                              Richmond, Virginia 23219
Washington, DC  20530                                         (804) 771-2310
(202) 307-1399                                                        Fax: (804) 771-2330
Fax: (202) 307-2397